UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
DOCKET NO. 1:15-cv-00115-MOC

| | |
|---|---|
| **JAMES GARY OWEN,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| Vs. ) | ORDER |
| ) | |
| **CAROLYN W. COLVIN,** ) | |
| **Acting Commissioner of Social Security,** ) | |
| ) | |
| Defendant. ) | |

**THIS MATTER** is before the court on Plaintiff's Motion for Summary Judgment (#9) and Defendant's Motion for Summary Judgment (#13). This matter has been fully briefed and is ripe for review. Having considered the motions and reviewed the pleadings, the court enters the following Order.

**I. ADMINISTRATIVE HISTORY**

James Gary Owen ("Plaintiff") filed his application for disability insurance benefits under Title II of the Social Security Act (the "Act") on March 16, 2011, alleging that he became disabled and unable to work on November 14, 2005. (Tr. 17, 105-07). After denial of his application initially and upon reconsideration, Plaintiff filed a request for a hearing before an Administrative Law Judge ("ALJ"). (Tr. 17, 145-151, 154-158). On June 25, 2013, a hearing was held before ALJ Gregory M. Wilson for <u>de novo</u> consideration of Plaintiff's claim. (Tr. 41-69). On December 13, 2013, the ALJ, upon consideration of the entire record, issued his decision that Plaintiff was not disabled within the meaning of the Act. (Tr. 14-35). On April 24, 2015, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final

-1-

decision of the Commissioner subject to review by this court. (Tr. 1-6). Plaintiff has exhausted all available administrative remedies, and this case is now ripe for judicial review pursuant to 42 U.S.C. § 405(g).

## II. FACTUAL BACKGROUND

It appearing that the ALJ's findings of fact are supported by substantial evidence, the undersigned adopts and incorporates such findings herein as if fully set forth. Such findings are referenced in the substantive discussion which follows.

## III. STANDARD OF REVIEW

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Review by a federal court is not de novo, Smith v. Schwieker, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Perales, 402 U.S. at 401 (internal citations omitted). A court will "affirm the Social Security Administration's disability determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." Mascio v. Colvin, 780 F.3d 632, 634 (4th Cir. 2015) (internal quotation marks omitted). "Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion. It consists of more than a mere scintilla of evidence but may be less than a preponderance." Pearson v. Colvin, 810 F.3d 204, 207 (4th Cir. 2015) (citation and internal quotation marks omitted). A court is not, however, to "reweigh conflicting evidence[] [or] make credibility determinations" in evaluating whether a decision is supported by substantial

evidence; rather, "[w]here conflicting evidence allows reasonable minds to differ," a reviewing court will defer to the Commissioner's decision. Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation marks omitted). The Fourth Circuit has explained the role of the district court when engaging in substantial evidence review as follows:

> the district court reviews the record to ensure that the ALJ's factual findings are supported by substantial evidence and that its legal findings are free of error. If the reviewing court decides that the ALJ's decision is not supported by substantial evidence, it may affirm, modify, or reverse the ALJ's ruling with or without remanding the cause for a rehearing. A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence. If the reviewing court has no way of evaluating the basis for the ALJ's decision, then the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.

Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013) (internal citations and quotations omitted).

In the absence of meaningful factual development by the ALJ, a district court commits reversible error by "mining facts from the … record." Brown v. Colvin, 2016 WL 502918, *1 (4th Cir. February 9, 2016). Instead, courts are to "remand to avoid engaging in fact-finding 'in the first instance' and to allow the ALJ to further develop the record so that … meaningful judicial review [may occur]." Id. at *2 (quoting Radford, 734 F.3d at 296).

When considering cross-motions for summary judgment, the court "examines each motion separately, employing the familiar standard under [Fed. R. Civ. P. 56]." Desmond v. PNGI Charles Town Gaming, L.L.C., 630 F.3d 351 (4th Cir. 2011); Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (the court reviews each motion separately on its own merits in order to "determine whether either of the parties deserves judgment as a matter of law") (internal citations omitted).

## IV.  SUBSTANTIAL EVIDENCE

### A.  Introduction

The court has read the transcript of Plaintiff's administrative hearing, closely read the decision of the ALJ, and reviewed the exhibits contained in the administrative record. The issue is not whether the court might have reached a different conclusion had it been presented with the same testimony and evidentiary materials, but whether the decision of the ALJ is supported by substantial evidence. For the reasons explained herein, the court finds that it is.

### B.  Sequential Evaluation

A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled. The Commissioner evaluates a disability claim under Title II pursuant to the following five-step analysis:

a. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

b. An individual who does not have a "severe impairment" will not be found to be disabled;

c. If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix 1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;

d. If, upon determining residual functional capacity, the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

e. If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience, must be considered to determine if other work can be performed.

20 C.F.R. § 404.1520(b)-(f). The burden of proof and production during the first four steps of the inquiry rests on the claimant. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth

step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. Id. In this case, the Commissioner determined Plaintiff's claim at the fifth step of the sequential evaluation process.

### C. The Administrative Decision

In rendering his determination that Plaintiff was not disabled under the Act, the ALJ applied the five-step sequential evaluation process for evaluating claims for disability under the Act. Analyzing the threshold requirement of step one, the ALJ began with a finding that Plaintiff had not engaged in substantial gainful activity at any time since his alleged onset date through his date last insured, December 31, 2014. (Tr. 20). At step two, the ALJ determined that Plaintiff had the following severe impairments: degenerative disc disease; degenerative joint disease, right knee; obesity; and psoriasis. (Id.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 23). The ALJ then found that Plaintiff had the residual functioning capacity ("RFC") to perform medium work activity, specifically finding that Plaintiff could: lift or carry 50 pounds occasionally and 25 pounds frequently; sit, stand or walk for six hours, each, in an eight-hour workday; only occasionally use his right lower extremity for pushing or pulling; only occasionally stoop, crawl, or climb ladders, ropes and scaffolds; frequently climb ramps or stairs, balance, crouch, and reach; never kneel using his right lower extremity; only perform occasional handling; and must avoid exposure to temperature extremes. (Tr. 24). At step four the ALJ determined that Plaintiff was unable to perform any past relevant work activity. (Tr. 33). At step five, the ALJ determined (with the aid of vocational expert testimony) that Plaintiff was able to perform other work that existed in significant numbers in the

national economy. (Tr. 34). Accordingly, the ALJ found that Plaintiff was not disabled within the meaning of the Act. (Tr. 35).

  **D.**  **Discussion**

    *1. Plaintiff's Assignments of Error*

 Plaintiff asserts four assignments of error. Plaintiff contends the first error is that the ALJ failed to perform a function-by-function assessment in formulating Plaintiff's RFC. Next, Plaintiff argues that the ALJ erred in his assessment of the medical opinion evidence. Plaintiff's final argument is two-fold. The vocational expert ("VE") testified that, given the limitations found by the ALJ in his RFC, Plaintiff could not work. The transcript of the hearing indicates that following that testimony, there was some additional inaudible testimony from VE, and then the VE listed jobs available to Plaintiff, all of which were "light work." Plaintiff argues that where the uncontradicted vocational testimony is that, given the limitations found by the ALJ, Plaintiff is not employable, this case should be reversed outright and benefits awarded. In the alternative, Plaintiff asserts that the case should be remanded if the court finds it reasonably probable that the VE retracted his listing of appropriate jobs during the inaudible portions of the testimony.

    *2. First Assignment of Error: Function-by-Function Analysis*

  Plaintiff first contends that the ALJ erred by failing to perform a function-by-function assessment of the relevant evidence and thus failed to comply with the directives of SSR 96-8p. Plaintiff makes almost no argument on this issue in his briefing aside from making a recitation of the applicable law. However, upon review of the governing legal standards as applied to the facts of this case, the court finds no error in the ALJ's decision.

At step four of the disability determination, the ALJ assesses the claimant's RFC, or what a claimant can still do, factoring in "all of [the claimant's] medically determinable impairments of which [the ALJ] is aware." 20 C.F.R. § 416.945(a)(2). "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." SSR 96-8P, 1996 WL 374184, at *1. The RFC assessment must address both the exertional and non-exertional capacities of the individual. Id. at *5. Exertional capacity "addresses an individual's limitations and restrictions of physical strength and defines the individual's remaining abilities to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, and pulling." Id. Non-exertional capacity considers work-related limitations and restrictions that do not depend on an individual's physical strength, such as "an individual's abilities to perform physical activities such as postural (e.g., stooping, climbing), manipulative (e.g., reaching, handling), visual (seeing), communicative (hearing, speaking), and mental (e.g., understanding and remembering instructions and responding appropriately to supervision)....it also considers the ability to tolerate various environmental factors (e.g., tolerance of temperature extremes)." Id.

Only after that function-by-function analysis has been completed may RFC "'be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.'" Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (quoting SSR 96–8p, 61 Fed.Reg. at 34, 475). Additionally, SSR 96-8p "explains that the [RFC] assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." Id. (internal quotation marks and citations omitted). The RFC assessment "must

include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." SSR 96–8p, 1996 WL 374184, at *7. The Fourth Circuit has explained that "expressing the RFC before analyzing the claimant's limitations function by function creates the danger that the adjudicator will overlook limitations or restrictions that would narrow the ranges and types of work an individual may be able to do." Monroe v. Colvin, __F.3d__, No. 15-1098, 2016 WL 3349355, at *9 (4th Cir. June 16, 2016) (citation and internal quotation marks omitted)).

The Fourth Circuit's decision in Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) held that remand may be appropriate where "'an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'" Id. (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2nd Cir. 2013) (per curiam)). The Circuit declined, however, to adopt a "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," noting that such rule "would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'" Id.

Plaintiff asserts that the ALJ failed to perform the required function-by-function assessment, and that his final decision as to disability is based upon an incomplete and inaccurate assessment of Plaintiff's RFC. (Tr. 12). Plaintiff further argues that the ALJ erred by using boilerplate language in the RFC analysis, requiring remand. (Tr. 13).

As to Plaintiff's first argument, though the ALJ did not explicitly mention the "function-by-function" step in his decision, he properly considered the relevant functions. His written opinion states:

> In summary, I limited the claimant to medium work because of the claimant's lumbar impairment, right knee impairments and obesity. Pushing and pulling with the right lower extremity was limited because of the knee impairment. Stooping and crouching were limited because of the claimant's lumbar impairment. Climbing, ropes ladders scaffolds, balancing, kneeling and crawling were limited because of the claimant's right knee impairment. The degree of the limitation was established when considering the combined effects of the claimant's back, knee and obesity. The synergies of the claimant's knee and obesity were persuasive in restricting ropes ladders scaffolds, kneeling and crawling to the degree established in my residual functional capacity. Handling limitations as well as limitations with respect to temperature extremes were imposed because of the claimant's psoriasis. Finally, I limited reaching because of the claimant's lumbar impairment.

(Tr. 27). The ALJ also discussed in detail how the medical evidence and reports daily activities supported those conclusions. (Tr. 27-29). As the ALJ clearly considered the relevant functions in relation to Plaintiffs' limitations, the court finds no error in the ALJ's compliance with SSR 96-8p.

Regarding Plaintiff's argument as to improper use of boilerplate language in the credibility determination, the Commissioner acknowledges that the ALJ used such language. (Tr. 25). However, in Mascio, the Fourth Circuit held that the question is whether the ALJ, despite use of the "backwards" boilerplate language, performed a proper credibility analysis. See Mascio, 780 F.3d at 639. In other words, use of the boilerplate is harmless error if the ALJ's assessment applied the correct standard. Id. ("The ALJ's error would be harmless if he properly analyzed credibility elsewhere."). Here, the court notes that Plaintiff makes no argument as to how the ALJ's credibility determination prejudiced him. The court can therefore overrule this assignment of error on these grounds alone. See Camp v. Massanari, 22 Fed.Appx. 311, 2001 WL 1658913, at *1 (4th Cir. 2001) (finding that an error by the administrative law judge was harmless where the plaintiff "made no showing of prejudice"); Hose v. Colvin, No. 1:15CV00662, 2016 WL 1627632, at *6 (M.D.N.C. Apr. 22, 2016) ("because the ALJ otherwise

supported her credibility analysis with substantial evidence, as discussed in more detail below, the ALJ's error remains harmless") (collecting cases). However, even assuming that Plaintiff had identified some way in which the credibility determination prejudiced him, the court finds no error in the ALJ's analysis.

In reviewing Plaintiff's claim regarding the ALJ's credibility determination, the court notes at the outset that because the ALJ "had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). The correct standard and method for evaluating claims of pain and other subjective symptoms has developed from the Fourth Circuit's decision in Hyatt v. Sullivan, 899 F.2d 329 (4th Cir. 1990) (Hyatt III), which held that "[b]ecause pain is not readily susceptible of objective proof . . . the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative." Id. at 336. A two-step process for evaluating such a subjective complaint was developed by the Fourth Circuit in Craig v. Chater, 76 F.3d 585 (4th Cir. 1996). This two-step process for evaluating subjective complaints corresponds with the Commissioner's relevant rulings and regulations. See 20 C.F.R. § 404.1529; SSR 96-7p.

The first step requires the ALJ to determine whether there is "objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." Craig, 76 F.3d at 594. If the ALJ finds such an impairment, he must then proceed to the second step and assess "the intensity and persistence of the claimant's pain, and the extent to which it affects [his] ability to work." Id. at 595; see also 20 C.F.R. § 416.929(c)(1), 404.1529(c)(1); SSR 96-7p. The ALJ must consider

the following: (1) a claimant's testimony and other statements concerning pain or other subjective complaints; (2) claimant's medical history and laboratory findings; (3) any objective medical evidence of pain; and (4) any other evidence relevant to the severity of the impairment. Craig, 76 F.3d at 595; 20 C.F.R. § 404.1529(c); SSR 96-7p. The term "other evidence relevant" includes: a claimant's activities of daily living; the location, duration, frequency, and intensity of their pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medications taken to alleviate their pain and other symptoms; treatment, other than medication, received; and any other measures used to relieve their alleged pain and other symptoms. Craig, 76 F.3d at 595. If the ALJ does not find a claimant's statements to be credible, the ALJ must provide specific reasons supported by the evidence. 20 C.F.R. § 404.1529(c)(4); SSR 96-7p; Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir. 1985) ("credibility determinations . . . should refer specifically to the evidence informing the ALJ's conclusion"). "This duty of explanation is always an important aspect of the administrative charge, and it is especially crucial in evaluating pain, in part because the judgment is often a difficult one, and in part because the ALJ is somewhat constricted in choosing a decisional process." Hammond, 765 F.2d at 426 (internal citations omitted).

Accordingly, the court must determine whether the ALJ's consideration covered the relevant functions, whether his decision provides a sufficient basis to review his conclusions, and, ultimately, whether that decision is supported by substantial evidence in the record. Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015). Here, at the first step of Craig, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms (Tr. 25). At the second step, however, the ALJ determined that Plaintiff's

statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible to the extent they are inconsistent with the above [RFC] assessment." (Id.) As noted above, the ALJ is tasked with the duty of providing specific reasons for discrediting a claimant's testimony in this manner. The ALJ noted inconsistencies in Plaintiff's statements where he stated he did not use a computer, but his mother noted that he used a computer daily to stay in contact with his family and friends. (Id.) Further, the ALJ pointed to Plaintiff's allegation that he had a "big drop" in his ability to perform daily activities, but noted that medical records suggested that his depression was improved and his pain was controlled by medication, suggesting his statements were not credible. (Id.) The ALJ also noted that Plaintiff alleged severe side effects from medication, but in medical records, Plaintiff indicated he did not have side effects. (Id.)

The ALJ concluded his analysis with a long discussion of how significant specific medical evidence further refuted Plaintiff's claims about his level of pain. (Tr. 25-26). The ALJ noted that despite Plaintiff's complaints that he suffers severe knee and back pain, the medical records are inconsistent with such complaints. Id. Medical evidence indicated that Plaintiff endured no joint tenderness, that his pain was controlled with medications, and that generally the degree of physical limitations suggested by Plaintiff's testimony was not reasonably supported by the physical examination results, diagnostic tests, and activities of daily living. (Tr. 26). The identified discrepancies throughout the record weigh against a finding of complete credibility. See Silva v. Colvin, No. 5:15-CV-00131-MOC, 2016 WL 2858929, at *6 (W.D.N.C. May 16, 2016). Finally, the ALJ noted that Plaintiff sat through the nearly hour-long hearing without any

apparent discomfort, which discredited his allegations of only being able to sit for fifteen minutes at a time.

After closely reviewing the record before the ALJ, as well as his reasoning, this court finds that substantial evidence supports the ALJ's consideration of the required functions and credibility analysis. The court will therefore overrule Plaintiff's first assignment of error.

### 3. *Second Assignment of Error: Weight to Opinion Evidence*

Next, Plaintiff argues that the ALJ erred by rejecting physicians' opinions of his medical conditions. Pursuant to governing regulations, an ALJ must evaluate and weigh medical opinions, regardless of their source, with the following factors in mind: "(1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005); see also 20 C.F.R. § 404.1527 (2005). Medical opinions constitute statements from physicians and psychologists, as well as other acceptable medical sources, reflecting judgments about the nature and severity of the claimant's impairment, including the claimant's symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairment, and the claimant's physical or mental restrictions. 20 C.F.R. § 404.1527(a)(2). An ALJ must evaluate every medical opinion in the record. See 20 C.F.R. § 404.1527(c). Under the governing regulations, "a treating physician's opinion on the nature and severity of the claimed impairment is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001) (citing 20 C.F.R §

416.927). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). In such circumstances, the ALJ has discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001).

A "treating physician" is a physician who has observed the Plaintiff's condition over a prolonged period of time. Mitchell v. Schweiker, 699 F.2d 185, 187 (4th Cir. 1983). "Although the treating physician rule generally requires a court to accord greater weight to the testimony of a treating physician … The ALJ may choose to give less weight to the testimony of a treating physician if there is persuasive contrary evidence." Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992), as amended (May 5, 1993) (internal citations omitted). If the ALJ does not accord controlling weight to a treating source's opinion, he must "give good reasons" for doing so. 20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2). The ALJ's explanation of these "good reasons" "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2P, 1996 WL 374188, at *5 (July 2, 1996). "[F]ederal courts have remanded decisions of the Commissioner when they fail to articulate 'good reasons' for discrediting the opinion of a treating source." Newhart v. Colvin, 6:13-CV-01606, 2014 WL 1330929 (S.D.W. Va. Mar. 31, 2014). See also Slayton v. Apfel, 175 F.3d 1016, 1999 WL 152614, at *3 (4th Cir. 1999) (unpublished table opinion) (remand appropriate where "ALJ did not indicate the weight given to the findings of each of the treating physicians"); Stroup v. Apfel,

205 F.3d 1334, 2000 WL 216620, at *6 (4th Cir. 2000) (unpublished table opinion) ("Because the ALJ did not explain adequately why the reports of [other physicians] were a sufficient basis for rejecting [the treating physician]'s opinion, we cannot determine whether the ALJ properly rejected [the] treating physician's opinion 'as inconsistent with the other substantial evidence in the record.' We therefore must remand the case to the ALJ for a new hearing.'" (quoting 20 C.F.R. § 404.1527)).

In this case, Plaintiff argues that his allegations of disability are supported by the opinions of two physicians—Plaintiff's treating physician (non-specialist) Bob L. Webb, M.D. and one-time examiner Carol A. Kooistra, M.D., a neurologist. The ALJ assigned little weight to those opinions, however, finding that they were not consistent with the treatment notes and diagnostic testing in the record. (Tr. 29-33). Both physicians stated that Plaintiff's back pain was his most serious issue, but Dr. Kooistra noted that his straight leg raising was negative, which indicated no significant back pain. (Tr. 752-53). Dr. Kooistra also noted that Plaintiff had a mildly to moderately impaired tandem walk, and his Romberg test (for balance) was negative. (Tr. 753). Dr. Kooistra also noted good reflexes and motor strength. Regarding his knee, Plaintiff had flexion to 120 degrees (fairly normal) and extension to zero degrees (completely normal) with only some diffuse swelling noted. (Tr. 752-53). The court finds that the ALJ's decision to reject Dr. Kooistra's opinion was based on actual examination and treatment notes is supported by evidence on record. The ALJ also noted that Dr. Kooistra was a one-time examiner and had no history of treatment with Plaintiff, which properly entitled the ALJ to assign less weight to her opinion given that it conflicted with evidence of record. In sum, the ALJ had the authority to dismiss Dr. Kooistra's final opinion based on the substantial evidence noted above.

Regarding the opinion of Plaintiff's treating physician Dr. Webb, the ALJ noted that he was not a specialist, but a general practitioner. Dr. Webb opined that Plaintiff would need to rest for several hours during an eight-hour workday and could not engage in anything more than sedentary work because of his pain, his need to change positions frequently, and side effects of pain medication. (Tr. 30). The ALJ afforded Dr. Webb's final opinion little weight based on the physical examination and diagnostic test evidence on record discussed above, which conflicted with Dr. Webb's opinions. (Tr. 30-31). The ALJ noted that there are few laboratory findings to suggest significant disabling pain. Further, the ALJ noted that Dr. Webb's examinations were fairly normal, and that Plaintiff's pain is fairly well controlled with medications. (Tr. 31). On the record, Plaintiff alleged lower back pain indicating that it hurts and gets worse, but the physician also noted that taking medication helps him perform his activities of daily living. (Tr. 913). Dr. Webb noted that Plaintiff requires pain medications to remain functional, but specifically noted that Plaintiff's chronic back pain is "generally well controlled" with his medications, and that Plaintiff was able to remain functional. (Tr. 890). Similarly, although Plaintiff asserts that the medications affect his overall ability to function, the ALJ noted that medical records show that Plaintiff had not had serious side effects with his medications. (Tr. 30, 835). Likewise, Anthony Carraway, M.D., the state one-time physical and neurological examining physician, indicated after examination that Plaintiff exhibited "rather minimal impairment of attention and concentration," suggesting that Plaintiff's medications were not impairing his ability to function. (Tr. 827). Dr. Carraway also noted that Plaintiff had no psychotic reactions, no delusions or perceptual disturbances, and no thought disorder was present, again suggesting Plaintiff's medications were not affecting his ability to perform activities and function. (Tr. 826). In short,

the medical evidence supports a finding that Plaintiff, while not pain free, was able to function well with medication. "If a symptom can be reasonably controlled by medication or treatment, it is not disabling." Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986).

Finally, the court notes that the ALJ's reliance on Dr. Carraway's opinion over Plaintiff's treating physician, Dr. Webb, is supportable. As the ALJ notes, Dr. Webb's opinions are seemingly based upon Plaintiff's own allegations of pain. (Tr. 31). The Fourth Circuit has held that an ALJ may give the medical opinion of a treating physician little weight if the opinion is based on the subjective complaints of the patient without sufficient evidence to substantiate their claims. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). In Mastro, the ALJ gave little weight to the plaintiff's treating physician opinions as it was "based largely upon the claimant's self-reported symptoms" considering the plaintiff's laboratory tests and medical examinations were within normal parameters. Id. Similarly, in this case the ALJ afforded little weight to Dr. Webb's opinion, noting that his conclusions were seemingly based upon Plaintiff's subjective complaints rather than the identified laboratory and medical evidence on record. (Tr. 31).

Here, despite the fact that Dr. Webb was a treating physician, the ALJ properly gave little weight to his opinion because it was inconsistent with other persuasive, contrary evidence and because he gave good reasons for doing so. See 20 C.F.R § 416.927; Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Accordingly, the court finds that the ALJ properly evaluated the opinion evidence provided by physicians in this case. Plaintiff's second assignment of error is therefore overruled.

### *4. Third Assignment of Error: Vocational Expert's Inaudible Testimony*

Finally, Plaintiff argues that where the uncontradicted vocational testimony is that, given the limitations found by the ALJ, Plaintiff is not employable, this case should be reversed outright and benefits awarded. In the alternative, Plaintiff asserts that the case should be remanded if the court finds it reasonably probable that the VE retracted his listing of appropriate jobs during the inaudible portions of the testimony.

Where vital testimony of a vocational expert is missing or inaudible, the court conducting judicial review cannot find that the ALJ's decision is supported by substantial evidence. See Russell v. Sullivan, 914 F.2d 1429 (4th Cir. 1990) (holding that substantial evidence does not exist when critical testimony is inaudible). The Fourth Circuit recently affirmed that it is appropriate for the district court to reverse outright, rather than remand, "where 'the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and… [where] reopening the record for more evidence would serve no purpose.'" McLeod v. Colvin, No. 15-1118, 2015 WL 5296807, at *2 (4th Cir. Sept. 11, 2015) (citing Breeden v. Weinberger, 493 F.2d 1002, 1012 (4th Cir. 1974)). "In reviewing for substantial evidence, we do not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [Commissioner]." Craig v. Chater, 76 F.3d 585, 589 (4th Cir.1996). Nor should the reviewing court "engage in these exercises in the first instance." Radford v. Colvin, 734 F.3d 288, 296 (4th Cir.2013).

Here, Plaintiff argues that this case should be reversed or, alternatively, remanded, because there was inaudible VE testimony after during the exchange between the VE and the ALJ at the hearing. (Doc. 9-1, 13-14). The court has closely reviewed the transcript of the

hearing in this case. In his testimony, the VE noted that given Plaintiff's limitations as described in the ALJ's RFC, Plaintiff could not work any of his previous jobs or any jobs of medium level-work with occasional handling. (Tr. 64). After this statement, the transcript indicates some (apparently brief) inaudible testimony, followed by the VE testifying that Plaintiff could handle certain "light jobs" (ticket taker, ticket seller, and furniture rental clerk). (Tr. 65-66). Plaintiff asserts that the inaudible testimony causes confusion in the statements on record, and that possibly the VE withdrew his opinions during the inaudible portions of the transcript.

The court finds no support for such arguments. Although there are periods of inaudible testimony, the VE's testimony clearly states that Plaintiff can perform the identified "light jobs." (Tr. 66). Relying on that testimony and the specific jobs identified by the VE, the ALJ found that Plaintiff could perform jobs at the light level given his RFC. (Tr. 34). A person who can perform medium work, by definition, can also perform sedentary and light work. See 20 C.F.R. § 404.1567(c) ("Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work.") (emphasis added). This assessment is legally and factually supported. Although there are moments of apparent confusion between the ALJ and the VE indicated in the transcript, it is ultimately clear that the VE testified that Plaintiff could perform the "light work" jobs articulated, which supports the ALJ's final determination. Accordingly, the court finds no error in the ALJ's determination that Plaintiff could perform work that exists in the national economy. The court will therefore overrule this assignment of error.

### E. Conclusion

The undersigned has carefully reviewed the decision of the ALJ, the transcript of the proceedings, Plaintiff's motion and brief, Defendant's motion and brief, and Plaintiff's assignments of error. Review of the entire record reveals that the decision of the ALJ is supported by substantial evidence.  See Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).  Finding that there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Perales, 402 U.S. at 401 (internal citations omitted), Plaintiff's Motion for Summary Judgment will be denied, the Commissioner's Motion for Summary Judgment will be granted, and the decision of the Commissioner will be affirmed.

### ORDER

**IT IS, THEREFORE, ORDERED** that:

(1) the decision of the Commissioner, denying the relief sought by Plaintiff, is **AFFIRMED**;

(2) Plaintiff's Motion for Summary Judgment (#9) is **DENIED**;

(3) Defendant's Motion for Summary Judgment (#13) is **GRANTED**; and

(4) this action is **DISMISSED**.

Signed: August 14, 2016

Max O. Cogburn Jr.
United States District Judge